ALEXANDER BARNET

*v.*

ROBERT FERGUS *et al.*

1. CHATTEL MORTGAGES—*of possession in the mortgagor for purposes of sale.* It has been held that a mortgage of a stock of goods, containing a provision authorizing the mortgagor to retain possession for the purpose of selling in the usual course of trade, was fraudulent and void as to creditors.

2. It follows, that where the mortgage contains no such provision, but the mortgagee nevertheless knowingly permits the mortgagor to make sale of the property in the ordinary course of trade, and in the same way as before the mortgage was made, this would be such a perversion of the

mortgage from its legitimate purposes, as to render it fraudulent in law, and void as to creditors, although it was valid on its face and at its inception.

3.   But while the mortgagee would thus lose his lien as to so much of the property as he permits the mortgagor to keep for purposes of sale, yet such subsequent acts would not necessarily render the mortgage void *in toto*, as it might remain valid as to other property embraced in the mortgage to which such acts did not extend.

4.   So, where a chattel mortgage covered a printing press and its appurtenances, and certain books and blanks, which had been printed by the mortgagor, and which were held by him for sale, and the mortgagor continued, with the knowledge of the mortgagee, to sell such books and blanks, in the same way after as before the mortgage was made, *it was held*, the mortgagee lost his lien as against creditors, as to the books and blanks, but not as to the printing press and its appurtenances.

5.   Nor would the fact that the mortgagee permitted the mortgagor to control a portion of the mortgaged property in a manner inconsistent with his rights as a mortgagee, of itself, invalidate the instrument as to other property not so controlled, but, at most, would be a circumstance which might be considered in connection with other facts, in determining the *bona fides* of the transaction.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an action of replevin, brought by Alexander Barnet, against Robert Fergus, and John L. Beveridge, sheriff of Cook county, to recover of them the possession of certain printing materials, printing presses, and " stock in trade," of James Barnet, which had been levied upon by the sheriff, as the property of James Barnet, under, and by virtue of, an execution issued upon a judgment in favor of Fergus, for $1,861, and costs, which he, Fergus, had obtained in the Superior Court of Chicago, against James Barnet, on the 3d day of October, 1867, and that the execution so issued bore date Nov. 7, 1867, and was returned executed Nov. 13, 1867.   It appears, from the record, that James Barnet executed a mortgage in due form to Alexander Barnet, bearing date Aug. 6, 1867, to secure the sum of $1,980, with interest thereon, upon the

printing materials, presses, and "stock in trade," then belong-ing to James Barnet, the same that was levied upon under this execution. It also appears, that Alexander Barnet permitted James to sell, in the ordinary course of trade, from his "stock in trade" so mortgaged, and this is claimed as a waiver of his lien upon the entire property. The "stock in trade" referred to seems to have been certain books and blanks, which James Barnet had then on hand, and which he printed from time to time.

The court below rendered judgment for the defendants, and the plaintiff appeals, and the assignment of errors presents the single question, whether the mortgagee, by permitting the mortgagor to sell, in the due course of trade, a certain portion of the mortgaged property, lost his lien upon the residue.

Mr. W. T. Burgess, for the appellant.

Messrs. Hervey, Anthony & Galt, for the appellees.

Mr. Justice Lawrence delivered the opinion of the Court:

It was held by this court, in *Davis* v. *Ransom*, 18 Ill. 402, and in *Read* v. *Wilson*, 22 ib. 380, that a mortgage of a stock of goods, containing a provision authorizing the mortgagor to retain possession for the purpose of selling in the usual course of trade, was fraudulent and void as to creditors. This was held to be fraud in law. It is a necessary consequence of these decisions, that where the mortgage contains no such pro-vision, but the mortgagee nevertheless knowingly permits the mortgagor to make sale of the property in the ordinary course of trade, and in the same way as before the mortgage was made, this would be such a perversion of the mortgage from its legiti-mate purposes as to withdraw from its protection, and place within the reach of other creditors, all of the property which the mortgagee had permitted the mortgagor to hold for sale in the ordinary course of his business. This principle has been

recognized in *Griswold* v. *Sheldon*, 4 Comst. 580, and *Delavan* v. *Ensign*, 21 Barb. 88. The case of *Ogden* v. *Stewart*, 29 Ill. 124, quoted by counsel for appellee, is hardly in point, as that was decided on the ground that the mortgagee, having knowingly permitted the mortgagor to make previous sales, must be considered, in a contest with a purchaser of the remnant of the goods, to have waived the provision in the mortgage authorizing him to take possession in case the mortgagor should attempt to sell. The court simply held there was an implied authority from the mortgagee to make the sale, and therefore he could not object to it.

But it does not follow, from the principle above laid down, that where a mortgage covers different kinds of property, as, for example, a stock of goods in a store, held for the purposes of trade, and a parcel of horses upon a farm, because the mortgagee loses his right to enforce his mortgage as against creditors or purchasers in regard to the goods, he has therefore lost it in regard to the horses. It is to be remembered that the mortgage, in the case supposed, as in the case at bar, is a valid instrument upon its face and at its inception. But the mortgagee may lose his right to enforce it by subsequent acts, and he does so in regard to so much of the property as he permits the mortgagor to keep for the purposes of sale. But such subsequent acts in regard to a portion of the property do not necessarily render the mortgage void *in toto*. It may become invalid as to a part of the mortgaged property, and remain valid as to the residue. In the case above supposed, because the mortgagee has consented that the mortgagor shall sell his stock of goods, it would be extremely unreasonable to tell him he could not enforce his lien against the horses. The utmost that could be said to his injury, would be, that where the *bona fides* of the mortgage comes in question, the fact that he has permitted the mortgagor to use the goods in a manner inconsistent with his own rights as mortgagee, is a circumstance which a jury would have a right to consider in determining the question whether the mortgage was originally

made to defraud creditors, and is, therefore, equally void as to both goods and horses. The degree of weight to be given to this circumstance, would, of course, greatly depend upon the other evidence in each case. Taken by itself, and with no other circumstances to throw discredit upon the mortgage, it would merely show that the mortgagee had consented to release the goods from the lien of his mortgage, thereby impairing his own security to that extent, but would by no means justify the inference that he intended to abandon his lien upon the horses.

Applying these principles to the case at bar, we do not find it difficult of decision. The mortgage covered a printing press and its appurtenances, and certain books and blanks which had been printed by the mortgagor, and which were held by him for sale. The evidence shows he continued, with the knowledge of the mortgagee, to sell these books and blanks in the same way after as before the mortgage was made. As to these, the other creditors had a right to insist the lien of the mortgage, as against themselves, was lost. But not so as to the printing press and its appurtenances. The mortgagee had consented to nothing, in regard to that portion of the property, inconsistent with his position and rights as mortgagee. He had a right to relinquish his lien upon the books without losing that upon the press, and such relinquishment is, of itself, but very slight evidence of a fraudulent intent in making the mortgage. It is not claimed that the debt was not honestly due the mortgagee, and the court should have found for the plaintiff as to all the property except the books and blanks.

For this reason, the judgment must be reversed and the cause remanded.

*Judgment reversed.*