(No. 21747.—

AUGUST C. MEYER, Receiver, Appellant, vs. CHARLES E. MARTIN.—(L. O. SALE et al. Appellees.)

*Opinion filed February 23, 1933.*

FORREST B. GORE, (ELMER F. DAVIES, of counsel,) for appellant.

D. C. DOBBINS, for appellees.

FISHER, BOYDEN, BELL, BOYD & MARSHALL, (THOMAS L. MARSHALL, and WALTER T. FISHER, of counsel,) for the Reconstruction Finance Corporation, *amicus curiæ*.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

On February 18, 1930, Alva G. Martin, a farmer, was indebted to the Fisher State Bank, in Champaign county, in the principal sum of $1598 and executed his promissory note, payable one year after date, with interest at seven per cent per annum, to secure which he also executed a chattel mortgage which covered three mules, one horse, seven cattle, four hogs, one automobile, eighteen farm implements, and also 800 bushels of corn, fifteen tons of straw and three tons of hay. This mortgage contained the following clause: "Also conditioned that the mortgagor may retain possession of the said goods and chattels and keep and use the same until he shall make default," etc. Subsequently, upon a bill of complaint being filed in the circuit court of Champaign county, the Fisher State Bank was found to be insolvent and August C. Meyer was appointed receiver. When the receiver took possession he found among the assets of the bank the note and chattel mortgage in question. On February 26, 1931, he started to foreclose this mortgage by posting notices of sale in accordance with the provisions of the statute. Upon the same day L. O. Sale obtained a judgment against Martin in the circuit court of Champaign county in the sum of $646.41, and the Fisher Farmers Grain and Coal Company also obtained a judgment on that day against Martin for the sum of $450.13, and executions were issued, delivered to the sheriff and served on Martin on that date. On February 27, 1931, the sheriff took possession of the property

and asked Martin to act as custodian until the sale, which was to be held on March 9, 1931. No levy was made by the judgment creditors upon any of said property. A dispute between the judgment creditors and the receiver of the bank as to who was entitled to the property resulted in a stipulation among the parties whereby it was agreed that the sale might proceed and the rights of the parties be settled by the court. At the time of the foreclosure proceedings the corn, straw and hay had all been consumed by having been fed to stock. The other property was sold and realized a net amount of $922.70. Pursuant to the stipulation the receiver filed his intervening petition in the bank insolvency suit, setting up the facts and asking an adjudication upon the rights of the parties. The cause was referred to the master in chancery, who found as a matter of law that the chattel mortgage, in so far as it related to the consumable property, to-wit, the corn, straw and hay, was void as to antecedent and subsequent creditors but was valid as to the non-consumable property and that the bank was entitled to the proceeds of the sale. The exceptions to the master's report filed by appellees were overruled by the chancellor, who confirmed the findings of the master and entered a decree in conformity therewith, to reverse which an appeal was prosecuted to the Appellate Court for the Third District, where the judgment of the circuit court was reversed and the cause remanded, with directions to enter a decree finding the chattel mortgage fraudulent and void as to creditors. The Appellate Court granted an appeal and made a certificate of importance. The cause is here on appeal.

The contention of appellees is, that a mortgage of chattel property which includes property necessarily consumable in its use, if possession is reserved by the mortgagor with the right to use the same, is fraudulent *per se* as against antecedent and subsequent creditors. To sustain this contention appellees rely largely upon the case of

*Talty* v. *Schoenholz,* 323 Ill. 232. In that case the mortgage under consideration was similar to that in this case, in that it included both consumable and non-consumable property and that possession was reserved in the mortgagor with the right to use the same. In that case, as in this, the right of judgment creditors to levy upon the property was involved and much of the consumable property had been consumed. That case, however, differed from the present one in many particulars. In that case many questions were raised in the briefs as to the validity of the mortgage which we thought proper to discuss and to state the general principles of law applicable thereto. It was first contended that the mortgage was void by reason of non-compliance with the Bulk Sales act. We discussed that question *in extenso* and held that a chattel mortgage was not a sale or transfer within the meaning of that act, as the relation of the parties was merely that of debtor and creditor until foreclosure of the mortgage, and possession remains in the mortgagor subject to the mortgagee's lien. That case was a contest between the mortgagee and judgment creditors upon whose judgments executions had been issued at different times. It was contended by the judgment creditors that the mortgage was void as against their executions for the reason that there was no delivery of the mortgage to the mortgagee and acceptance of it by her. We discussed the rules of law with reference to the necessity of acceptance by the mortgagee and what constituted such acceptance, and held that as to one of the judgment creditors it was not accepted and did not become effective until after the execution had been delivered to the sheriff and become a lien on the property, and as to other creditors it became effective, if at all, at the time of acceptance, which was before the executions of those creditors were delivered to the sheriff. The evidence in that case showed that at the time of the making of the mortgage the mortgagor was a resident of the town of Nachusa, Lee county,

Illinois, and that it was acknowledged before a police magistrate of Dixon, in the town of Dixon, in Lee county. By virtue of section 2 of the Mortgage act as it existed at the time of the making of that mortgage, a chattel mortgage, to be valid as against the rights and interests of third persons when acknowledged by the mortgagor before a justice of the peace, must be acknowledged before a justice of the peace of the town where the mortgagor resided, and we held that for that reason the mortgage there in question was void as against creditors and that the case should have been decided in their favor by the trial court. We discussed the validity of a chattel mortgage where the mortgagor was by the mortgage given permission to use the mortgaged property where the property was of such a character that it was consumable by any use thereof which might be made by the mortgagor and laid down the general rule with reference to the mortgaging of such property, and in so doing said: "The chattel mortgage in question contained a provision that until default was made in the payment of the note it should be lawful for the mortgagor to retain the possession of the mortgaged property and use the same. The larger part of the property covered by the mortgage was of such a character that it was consumable by any use thereof which might be made by the mortgagor, and the evidence shows that much of it had been consumed prior to the foreclosure of the mortgage. To render a mortgage valid there must be a *bona fide* and certain appropriation of the property for the benefit of the creditor, and not a colorable one, in which the creditor has only a contingent interest, dependent upon the good faith of the mortgagor. (*Tennessee Nat. Bank* v. *Ebbert,* 9 Heisk. 152.) Based upon *Morgan Bros.* v. *Dayton Coal and Iron Co.* 183 S. W. 1019, *Morris* v. *Clark,* 62 id. 673, *Merchants and Mechanics Savings Bank* v. *Lovejoy,* 55 N. W. 108, *First Nat. Bank of Chicago* v. *Caperton,* 22 So. 60, *Franzke* v. *Hitchon,* 80 N. W. 931, *Robbins* v. *Parker,* 3 Metc. (Mass.)

117, *Darwin* v. *Handley*, 3 Yerg. 502, and other cases, the general rule is laid down in 11 Corpus Juris, 567, that a mortgage of property which is consumable in its use is *prima facie* fraudulent if possession is reserved by the mortgagor, and that it is fraudulent *per se* if the right to use such property is also reserved." We did not there hold that the mortgage was invalid in its entirety by reason of its allowance of such use by the mortgagor, or even that it was in part invalid by reason thereof, but held the mortgage invalid for other reasons. We did not hold that the general rule there laid down was applicable to all cases without exception, but laid down the further general rule that to render a mortgage valid there must be a *bona fide* and certain appropriation of the property for the benefit of the creditor and not a colorable one, in which the creditor has only a contingent interest, dependent upon the good faith of the mortgagor. The question was not there involved as to the validity of the provision in a chattel mortgage upon livestock and feed for such livestock that the mortgagor might use such feed by feeding it to the livestock mortgaged. Such a provision was not contained in the Talty mortgage and the evidence did not show that the feed used was fed to the property covered by the mortgage. In the present case appellant's counsel claim that the entire mortgage is valid, for the reason that the only use of the mortgaged property consumable by use was to feed it to the mortgaged stock and that such use was an appropriation of the property for the benefit of the mortgagee, thereby enhancing the value of the mortgaged stock.

This precise question has never been passed upon by this court. Cases have been cited to us by counsel for both appellant and appellees on the subject of chattel mortgages where the property mortgaged, or a portion thereof, was consumable by use and by the mortgage the mortgagor retained the right to use the property. We have carefully examined all the cases cited and many others bearing upon

this question, and while we find that upon some points the cases cited are in irreconcilable conflict, they are in unison in holding that a chattel mortgage solely on property which is consumable by use and such use is retained by the mortgagor is entirely void as against creditors, in accordance with the general rule laid down in the *Talty case*. We also find that the cases are in practical unanimity in holding that where a chattel mortgage is given upon property, some of which is consumable by use and some of it not, and the mortgagor is given the right to use the property generally, without restriction, such mortgage on the consumable property is void as against creditors. We find a third line of well reasoned cases stating an exception to the general rule that where a chattel mortgage upon property a part of which is consumable by the only use which could be made of it and a part of it (livestock) not so consumable, and the mortgage contains a provision that the mortgagor may retain the possession of the property and use the same, and it is provided in the mortgage that such use shall be limited to the feeding of the consumable property to the livestock covered by the mortgage, such use is a "certain appropriation of the property for the benefit of the creditor, and not a colorable one, in which the creditor has only a contingent interest, dependent upon the good faith of the mortgagor," and that such mortgage is valid as to both the consumable and non-consumable property, as against creditors. This rule is founded on logic and good conscience, as the use permissible is not for the benefit of the mortgagor but is for the benefit of the mortgagee in enhancing or preserving the value of the non-consumable property, so that it, as experience shows, would by reason of such use be rendered more valuable than the combined values of the consumable property actually used and the non-consumable property before such use, or its value preserved, and the mortgagee by reason of such use would have an enhanced security for the indebtedness secured by the chattel mort-

gage. See *Masson* v. *Anderson*, 62 Tenn. 296; *Berkner* v. *Lewis*, 133 Minn. 375; *VanArnsdale* v. *Hax*, 107 Fed. 878; *Pugh* v. *Harwell*, 18 So. 535.

Appellant, however, cannot in this case take advantage of the above exception to the general rule, for the reason that the use allowed the mortgagor by the terms of the mortgage was a general one and not limited to a use by feeding the consumable property to the specific livestock mortgaged, and the evidence shows that the mortgagor's use of the consumable property was not confined to feeding it to the specific livestock mortgaged. The mortgage here in question was, therefore, constructively fraudulent and void as to creditors so far as the consumable property was concerned. The question therefore arises as to whether the mortgage, being invalid as to the consumable property, must be held invalid in its entirety.

There is much conflict between the decisions of the various States upon this question and it would serve no good purpose to review and discuss them in detail. In a footnote to *Eastman* v. *Parkinson*, 133 Wis. 375, 13 L. R. A. (n. s.) 921, upon this question it is said: "There is much conflict among the courts of the different jurisdictions upon this question. This conflict arises to a considerable degree from the fact that the courts have followed decisions of other courts which were in principle different from the case being passed upon by the court. The decisions are so conflicting and so much confusion exists that it would be impracticable to attempt to formulate any general principles therefrom. It is believed, however, that the subject can be most advantageously handled and perhaps some of the existing confusion cleared by classifying the cases according to the facts. As a rule the cases passing upon this proposition may properly be subdivided as follows: (1) Chattel mortgages constructively fraudulent at inception as to a portion of the property covered thereby; (2) chattel mortgages valid at inception but constructively

fraudulent as to a portion of the property by subsequent agreement or conduct of the parties; (3) chattel mortgages actually fraudulent at inception; (4) chattel mortgages valid at inception but fraudulent as to a portion of the property by fraudulent agreement or subsequent fraudulent conduct of the parties; (5) mortgages covering both realty and personalty."

The mortgage here in question was given for a valuable consideration and there is no evidence of actual fraud. The only fraud shown is a constructive fraud as to a portion of the property covered by the chattel mortgage, bringing it within subdivision 1. In the foot-note above mentioned it is said as to a chattel mortgage of this kind: "A distinction is drawn by the courts of many jurisdictions between constructive fraud and actual fraud in a mortgage of personalty, and where a mortgage of personalty comes within the prohibition of the statute as to recording, or allowing the mortgagor to remain in possession, or allowing him to sell or use the property for his benefit, etc., and there is no fraudulent intent upon the part of the mortgagee and he has acted in good faith in the matter, he is said to be guilty of constructive fraud, and as to the property to which the fraud relates the mortgage is void. Other property covered thereby, however, is not affected even though this constructive fraud exists at the inception of the mortgage," citing *Hayes* v. *Westcott,* 91 Ala. 143; *State* v. *Tasker,* 31 Mo. 445; *Donnell* v. *Byern,* 69 Mo. 468; *Rocheleau* v. *Boyle,* 11 Mont. 451, 28 Pac. 872; *Lund* v. *Fletcher,* 39 Ark. 325; *Cook* v. *Halsell,* 65 Tex. 1; *In re Kahley,* 2 Biss. 383.

In *Rocheleau* v. *Boyle, supra,* upon this subject it was said: "Upon the second proposition, in view of the fact that the good faith of the parties to the mortgage is admitted, we can find no just ground for holding the mortgage void as to property mentioned therein other than merchandise. It is not contended that there was any ar-

rangement, understanding or permission allowing the mortgagor to deal with such other property as he did with the merchandise and the proceeds derived therefrom. Where fraudulent intent was not the motive which led to the transaction, a defect by which it loses part of its intended effect is not held to vitiate the whole transaction. In the case of *United States* v. *Bradley,* 10 Pet. 360, Mr. Justice Story, expressing the opinion of the court concerning this feature of an instrument, says: 'That bonds and other deeds may in many cases be good in part and void for the residue where the residue is founded in illegality but not *malum in se,* is a doctrine well founded in the common law and has been recognized from a very early period. Thus, in *Pigot's case,* 11 Coke, *27b,* it was said that it was unanimously agreed in 14 Hen. VIII, 25, 26, that if some of the covenants of an indenture or of the conditions indorsed upon a bond are against law and some are good and lawful, in this case the covenants or conditions which are against law are void *ab initio* and the others stand good. And notwithstanding the decision in *Lee* v. *Coleshill,* Cro. Eliz. 529, which, however, is distinguishable, being founded on a statute, the doctrine has been maintained and is settled law at the present day in all cases where the different covenants or conditions are severable and independent of each other and do not import *malum in se,* as will abundantly appear from the case of *Newman* v. *Newman,* 4 Maule & S. 66, and the other cases hereafter stated; and many more might be added.' The following cases are directly in point, and apply the doctrine to which Mr. Justice Story refers, to cases like the one at bar: *Hayes* v. *Westcott,* 91 Ala. 143, 8 So. Rep. 337; Jones on Chattel Mortgages, 351; *Barnet* v. *Fergus,* 51 Ill. 352; *Lund* v. *Fletcher,* 39 Ark. 325; *Donnell* v. *Byern,* 69 Mo. 468; *In re Kahley,* 2 Biss. 383; *In re Kirkbride,* 5 Dill. 116; *State* v. *Tasker,* 31 Mo. 445; *Voorhis* v. *Langsdorf,* id. 451."

In our judgment the mortgage here in question was invalid as to that part of the property which was consumable by the only use which could be made of it and was valid as to the remainder of the property.

The judgment of the Appellate Court is therefore reversed and the decree of the circuit court affirmed.

*Appellate Court reversed, circuit court affirmed.*