Jennings v. Sparkman.

JOHN M. JENNINGS, Appellant, v. JOHN SPARKMAN, Respondent.

St. Louis Court of Appeals, February 16, 1892.

1. **Chattel Mortgages**: RESERVATION OF THE POWER OF SUBSTITUTION. When a mortgage does not confer upon a mortgagor a general power of sale, or of substitution by way of sale, but only a power of substitution to supply a breakage, loss or waste of mortgaged property, the power thus conferred does not render the mortgage constructively fraudulent as being to the use of the mortgagor, especially when the mortgaged property includes a sawmill, portions whereof are constantly liable to wear out or get broken.

2. ——— : ——— : EXTRINSIC EVIDENCE. A chattel mortgage may be invalidated by extrinsic evidence of a general power of substitution of other property for mortgaged chattels, but extrinsic evidence that the mortgagor, while the mortgage was in force, expressly authorized the mortgagee to exchange some specific items of the property mortgaged for other property of a like nature, will not suffice for that purpose, and, therefore, will not warrant the submission of the question of the validity of the mortgage to the jury.

3. **Replevin**: ASSESSMENT OF VALUE OF PROPERTY. While the value of the property in controversy must, in an action of replevin, be assessed as of the date of the trial, the rule must be applied within reasonable and practicable limits, and, when it becomes impracticable to assess the value at that date, owing to the property having been scattered by the party in possession, the opposite party may show the value thereof when last accessible to him, and such value will, in the absence of proof to the contrary, be presumed to be its value at a trial occurring three or four years later.

4. **Replevin for Live Stock:** DAMAGES ON DEATH OF ANIMAL SUED FOR. This action of replevin was instituted for a mule which died before trial and while in the possession of defendant. *Held, arguendo,* that the plaintiff's recovery was, under such circumstances, limited to his damages for the capture and detention of the mule, and that he could recover therefor the full value of the use of the mule from the commencement of the action until it died, and also damages for a total depreciation in value in case it was shown that the death of the mule happened through the negligence or other fault of the defendant.

*Appeal from the Butler Circuit Court.*—HON. JOHN G. WEAR, Judge.

REVERSED AND REMANDED (*with directions*).

*Fred. A. Wislizenus,* for appellant.

(1) The instruction to find for defendant was error. The question whether in fact the deed is to the grantor's use is for the jury. *Weber v. Armstrong,* 70 Mo. 220; *Hewson v. Tootle,* 72 Mo. 632; *State ex rel. v. Cooper,* 79 Mo. 446; *Bullene v. Barrett,* 87 Mo. 186; *Thompson v. Foerstel,* 10 Mo. App. 299. There was nothing on the face of this deed of trust from which a power of sale in the grantor could be inferred. *Thompson v. Foerstel,* 10 Mo. App. 299; *Drug Co. v. Robinson,* 81 Mo. 23. The power in the grantor to sell must plainly appear, and cannot be inferred from circumstances, such as the character of the property. *Weber v. Armstrong,* 70 Mo. 220. (2) The court erred in ruling out all evidence as to values prior to the day of trial. Defendant had no right to sell the property. *Hawkins v. Taylor,* 15 Mo. App. 240. Defendant is liable for the value of not only the property he sold, but also of that which perished on his hands. Cobbey on Replevin, sec. 867, *et seq.;* Wells on Replevin, sec. 500, *et seq.; Barksdale v. Appleberry,* 23 Mo. 389.

*W. H. Clopton* and *S. M. Chapman*, for respondent.

(1) The deed of trust in question was constructively fraudulent, because of the authority given to the mortgagor to exchange mules and horses. R. S. 1889, secs. 5169, 5170. And when it is apparent from the face of the deed that it is in trust for the use of the grantor, it is the duty of the court to declare it void, as a matter of law, without the intervention of the jury. *State to use v. Busch*, 38 Mo. App. 440, 442–4; *Brooks v. Wimer*, 20 Mo. 506–7; *Zeigler v. Maddox*, 26 Mo. 575–7; *Walter v. Wimer*, 24 Mo. 63, 65; *Stanley v. Bruce*, 27 Mo. 269; *Billingsley v. Bunce*, 28 Mo. 547; *White v. Graves*, 68 Mo. 219, 223; *Metzner v. Graham*, 57 Mo. 404, 409. (2) Counsel for appellant complains of the rule announced by the trial court relating to the assessment of damages. If an unbroken line of adjudications can settle a rule of practice, it is now too firmly established to be controverted, that the measure of damages, in trials of this character, is the "value of the property at the time of the assessment." *Pope v. Jenkins*, 30 Mo. 528; *Hoester v. Teppe*, 27 Mo. App. 209, 210; *Burkeholder v. Rudrow*, 19 Mo. App. 60, 65; *Milling Co. v. Walsh*, 20 Mo. App. 107, 110; s. c., 24 Mo. App. 97, 99, 100; *Miller v. Beyden*, 34 Mo. App. 602, 607; *Chapman v. Kerr*, 80 Mo. 158, 163; *Mix v. Kepner*, 81 Mo. 93, 96; *Richey v. Burnes*, 83 Mo. 362, 365. No matter what may have been the rule adopted in other forums, it is settled in this state that the measure of damage is the value of the property at the time of trial, together with the value of the use of the property during the wrongful detention—and that some of the property may have died during the litigation does not change the rule. *Haile v. Hill*, 13 Mo. 619, 620; *Pope v. Jenkins*, 30 Mo. 534, 537.

THOMPSON, J.—This case was before this court on a former appeal, and is reported in 39 Mo. App. 663. It is an action of replevin for four mules of the alleged value of $500. The defendant purchased the mules from Joseph M. Fulton. Prior to his purchase Fulton had conveyed the mules, together with other property to the plaintiff, in trust to secure a debt due from Fulton to Berthold & Jennings, of St. Louis. On the trial from which the former appeal was prosecuted, and, also, on the trial from which the present appeal is prosecuted, the deed of trust was objected to by the defendant on two grounds: *First.* That it did not sufficiently describe the property. *Second.* That it was not recorded in the book for the recordation of chattel mortgages. Both of these objections were decided against the defendant, after much consideration, by this court on the former appeal. The court, therefore, at the last trial admitted the deed of trust in evidence, but, at the close of the whole case, discovered that it was invalid on its face, for reasons which had not occurred to the defendant's counsel or to this court. The court accordingly, of its own motion, instructed the jury "as to the effect of the deed of trust, that it was void on its face, because it gave the mortgagor on its face a power of disposition over the property covered by the deed of trust," and directed the jury to return a verdict for the defendant.

The clause of the deed of trust from which this deduction was made by the court is as follows: "Also, all other property of the same or similar kind and nature hereinbefore described, which, during the existence of any portion of the indebtedness hereinafter mentioned, shall be bought by the said party of the first part, or substituted by him for any of the personal property herein conveyed, to supply any breakage, loss or waste of the same, or any part thereof; it being agreed and understood that this instrument is to be and constitute a lien as well upon all the property hereinbefore

described, as upon all property of a similar kind or nature hereafter acquired and used in and about and in connection with said sawmill aforesaid, whether the same be added thereto or substituted for the same under the circumstances aforesaid, until the indebtedness hereinafter secured shall have been fully paid and satisfied."

It is plain that this language does not confer upon the mortgagor any general power of sale, or any general power of substitution by way of sale, but that the only power of substitution which it confers is a power of substitution for the purpose of supplying breakage, loss or waste of the property. This does not bring the case within the decision of the supreme court in *Stoddard v. Jones*, 78 Mo. 518, nor within the decision of this court in *State to use v. Busch*, 38 Mo. App. 440. When it is considered that a part of the property covered by the mortgage was a sawmill, portions of which are constantly liable to wear out or get broken, the appropriateness of the language to the subject-matter of the deed is apparent; and it is not at all apparent that the parties intended thereby to make a conveyance to the use of the mortgagor, within the meaning of our decision.

But it is argued that, if the deed in this particular is doubtful upon its face, this doubt is cleared up by the evidence of the plaintiff himself. It is undoubtedly the law that, in order to render a deed of trust for a mortgage fraudulent in law, it is not necessary that it should appear on the face of the instrument itself, that a general power of sale and substitution is reserved to the mortgagor; but it is sufficient, if it be shown by extrinsic evidence that such was the agreement and intent of the parties. *Bullene v. Barrett*, 87 Mo. 185. But this is true with this distinction, that, where the infirmity of the instrument appears on the face of the instrument itself, the court is to declare it void as matter of law, and is so to instruct the jury; whereas,

if extrinsic evidence is adduced for the purpose of showing that such was the agreement and intent of the parties, then such evidence must be submitted to the jury and the court must instruct them as to the legal effect of it, if believed, hypothetically as in other cases.

The evidence adduced in the present case, which is supposed to show this fraudulent agreement and intent, was as follows: C. M. Jennings, a member of the firm of Berthold & Jennings (beneficiaries in the deed of trust under which the plaintiff claims), testified as follows: "While the deed of trust was in force, I knew J. M. Fulton had exchanged a roan mule for a horse. He asked about doing it, and I told him to go ahead and do it. I don't know anything about J. M. Fulton selling some of the mules to a mule-buyer here. I heard of his letting Dr. Warren have two mules. * * * I gave him permission to exchange these mules for other mules and horses; was told of his selling mules to a mule-buyer."

The court here is of opinion that this evidence was not sufficient to take to the jury the question whether the parties to the mortgage intended, at the time when they made it, that the mortgagor should hold possession of the mortgaged property with a general power of sale for the purpose of substitution. If the mortgage itself had contained a clause that the mortgagor might substitute any of the personal property for other property of like kind, provided the mortgagee should consent thereto in each particular case, it would not have had this effect. Clearly this evidence does not help out the erroneous instruction given by the court, which declares the deed void on its face, so as to make the judgment a judgment for the right party.

With the view of obviating a third appeal, we are asked to consider certain rulings of the trial court on the last trial, rejecting evidence tendered by the plaintiff. When the mules were replevied in this case, September 29, 1886, the defendant gave the forthcoming

bond and retained possession.    One of the mules died
in his possession in the fall of 1887.    He sold another
of them "on the east side of the river at Hendrickson"
in the fall or winter of 1887.    He traded away the other
two in Wayne county in the spring of 1888.    The
plaintiff, having shown these facts, offered to prove by
divers witnesses, including the defendant, the value of
the mules at the time of the service of the writ of
replevin, and at the time of the sale and death of the
mules respectively.    The court excluded all this evi-
dence upon the ground that the value of the mules at the
day of trial, to-wit, in November, 1890, was the measure
of the plaintiff's damages, and not their value at any
other time.    These rulings were plainly erroneous.    It
is true that it is the law of this state that, in so far as
the *value* of the property forms an element of damage,
in actions of replevin, that value must be assessed as of
the date of the trial.    *Pope v. Jenkins*, 30 Mo. 529 ;
*Chapman v. Kerr*, 80 Mo. 158 ; *Mix v. Kepner*, 81 Mo.
93 ; *Anchor Milling Co. v. Walsh*, 24 Mo. App. 100.
Aside from this, the law of this state allows the plain-
tiff to recover damages which he has sustained through
the caption and detention of the property ; and the
decisions in the above cases leave the elements of this
damage uncertain beyond the rule that here, as in most
other cases, the law aims at compensation merely.
*Anchor Milling Co. v. Walsh, supra.*    It is perceived
that the rulings of the trial court put it out of the
power of the plaintiff to prove any substantial damages
at all, either under the head of value or under the head
of damages for caption and detention.    As to the mule
which died in 1887, it had become presumptively value-
less at the time of the trial in 1890.    The plaintiff
could recover nothing for that mule under the head of
value, but his total recovery would be under the head
of damages for caption and detention ; and under that
head he would be entitled to the full value of the use
of the mule from the commencement of the action until

it died, and also to damages for a total depreciation in value in case he should be able to show that the death happened through the negligence or other fault of the defendant. In the latter case he would clearly be entitled to show what the value of the mule was at the time of its death ; and, for the purpose of showing the value of the use of the mule from the commencement of the suit until it died, he would be entitled to show what the mule was worth during that time, and, hence, what it was worth at the commencement of the action. As to the other mules, which were sold and scattered by the act of the defendant, the plaintiff was, on grounds equally clear, entitled to prove their value at the time when they were last accessible to him, namely, at the time when his writ of replevin was served. The presumption is that a state of facts once shown to exist continues—a presumption to be indulged in within reasonable limits of course, and the presumption would be that a value shown to exist three or four years previously to the trial would be the value at the time of the trial, in the absence of countervailing evidence. It would, of course, be open to either party to show, according to his interest, that the value of the property had appreciated or depreciated in the meantime. But the plaintiff could not be expected to follow the mules into the different localities where the defendant had scattered them, and to keep *en rapport* with them so to speak, for the purpose of being able to give evidence of their value at the time of each successive trial. The inconvenient rule of damages in actions of replevin, prescribed by the supreme court in *Pope v. Jenkins*, *supra*, and in subsequent cases, must be applied within reasonable and practicable limits. The plaintiff is not to be required to follow the property, and prove its damage at the time of the trial, when the defendant by his voluntary act has put it out of the plaintiff's power so to do. But, if the plaintiff shows what their value was at the time when he instituted his action of

replevin, that will presumptively be their value at the time of the trial, unless the defendant shows the contrary.

Our judgment in the former appeal and in this appeal disposes of all questions except the question of value and damages. With the hope that this litigation may be finally ended, we reverse the judgment of the circuit court, and remand the cause with directions to confine the next trial to the assessment of the value of the property in controversy and such further damages as the plaintiff may have sustained through its caption and detention. It is so ordered. All the judges concur.